UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARLAND BROOKS,

                               Plaintiff,                                DECISION AND ORDER

v.                                                              Case # 14-CV-6690-FPG

GREGORY L. MULLEN, et al.,

                                Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Marland Brooks is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff commenced the instant action on October 29, 2014, in the United States District Court for the Southern District of New York, pursuant to 42 U.S.C. § 1983, alleging constitutional violations arising from events that occurred on January 4, 2012, while Plaintiff was housed at the Steuben County Jail. ECF No. 1. The case was transferred to this Court (ECF No. 5), and Defendants were served in the summer of 2015, but they failed to answer. Over two years later, in response to an Order to Show Cause, ECF No. 21, Defendants answered, and the parties commenced discovery.

It appears, however, that Defendants, did not provide Plaintiff with discovery he requested, and the Court held a conference on February 19, 2020 to set a trial date. ECF No. 65. At that time, Defendants indicated that they would provide discovery to Plaintiff and that they intended to file a motion for summary judgment. Recognizing that this case has been pending for over five years, the Court set an abbreviated briefing schedule and a trial date. The trial date was subsequently adjourned due to the COVID-19 Pandemic.

On March 6, 2020, Defendants Gregory L. Mullen, Luke Reinbold, and David Causer (collectively, "Defendants") moved for summary judgment, arguing that Plaintiff failed to exhaust

his administrative remedies.  ECF No. 68.  After receiving an extension of time, Plaintiff responded on March 27, 2020.  ECF No. 80.

For the reasons that follow, Defendants' motion for summary judgment is DENIED.

## FACTUAL BACKGROUND

Plaintiff testified at his deposition that on January 4, 2012, while he was an inmate at the Steuben County Jail, Defendants attacked him, causing serious injuries.  That day, Plaintiff "took somebody's cake" during mealtime, and, as a result, Defendants escorted Plaintiff to keep lock. ECF No. 68-9 at 19.  Defendants cuffed Plaintiff behind his back, and, when Mullen began to remove the cuffs upon arriving at the cell, a struggle ensued.  *Id.* at 20-21.  According to Plaintiff, Defendants told Plaintiff to get on his knees, and place his free hand on his head.  *Id.* at 22.  Not satisfied with Plaintiff's hand placement, Reinbold "started smushing [his] face into the mattress, broke [his] glasses."  *Id.*  Plaintiff "couldn't breathe."  *Id.*  Defendants tried to regain control of Plaintiff's free hand, causing his right shoulder to "pop."  *Id.* at 24-25.  Defendants kicked, hit, and pushed Plaintiff, and Plaintiff tried to defend himself.  *Id.* at 24-27.  Causer sprayed Plaintiff in the mouth with pepper spray.  *Id.* at 26.  Once Defendants were able to remove the handcuffs, Plaintiff lay on the floor and Defendants "really did what they had to do."  *Id.* at 27-28.  Eventually, Defendants "carried [Plaintiff] out" of the cellblock and Plaintiff was able to wash off the spray. *Id.* at 27-29.  Later that day, Plaintiff was brought to a different cell.  *Id.* at 30.

Plaintiff testified that he "wrote three grievances about this incident" but officers "ripped them up and threw them in the garbage."  *Id.* at 32.  Plaintiff indicated that he could not remember who these officers were.  *Id.*  He spoke to the major or superintendent several times about the incident, to no avail.  *Id.* at 32-33.  He retained a copy of one grievance, but it was misplaced when

he was transferred. *Id.* at 33. Plaintiff also testified—and the records bear out—that he had submitted numerous grievances in the past, but none were ever destroyed. *Id.* at 33.

## DISCUSSION

### I.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure states that "the court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary

judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).

## II.    Analysis

Defendants move for summary judgment exclusively on the grounds that there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies and that his failure to do so is not excused. The Court disagrees and finds that there are issues of fact as to whether Plaintiff's failure to exhaust his administrative remedies is excused.

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Failure to exhaust is an affirmative defense under the PLRA, and, as such, Defendants bear the initial burden of establishing that a grievance process exists, and Plaintiff bears the burden of demonstrating that such a process was unavailable. *Henrius v. Cty. of Nassau*, No. 13CV1192SJFSIL, 2019 WL 1333261, at *4-5 (E.D.N.Y. Mar. 22, 2019). Thus, to properly exhaust administrative remedies, an inmate must comply with the facility grievance "system's critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 95 (2006), including time limits. *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011).

"Under New York regulations, an inmate at a local correctional facility"—such as the Steuben County Jail—"must file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Baez v. Rathbun*, No. 16-CV-6552L, 2018 WL 3528311, at *4 (W.D.N.Y. July 23, 2018) (citing 9 N.Y.C.R.R. § 7032.4(d)); *see also Hill*, 657 F.3d at 124 (describing New York's grievance process for county jails).   The grievance procedure for inmates at the Steuben County Jail is contained in an Informational Handbook, which is attached to Defendants' motion.   It provides that inmates must first attempt to resolve the matter with the Housing Officer.  ECF No. 68-5 at 19.  If the inmate receives an unsatisfactory response, he may request a Grievance Form "in writing from the facility Grievance Coordinator," which he must "complete . . . within five days of the incident giving rise to the grievance."  *Id.*  The Inmate Handbook provides that the inmate "will receive a written determination within five business days of the Grievance Coordinator's response."  *Id.*  The inmate then has two business days thereafter to appeal to the Jail Superintendent, who will make a determination within five business days.  *Id.* A decision by the Jail Superintendent must be appealed in writing within three additional business days to "the Commission of Corrections Civilian Policy and Complaint Review counsel."  *Id.*

Plaintiff admits that he did not exhaust his administrative remedies for any grievance filed relating to the January 4, 2012 incident.  ECF No. 1 at 2.  Rather, he asserts that he tried to follow the grievance procedure, but was unable to do so because the officers destroyed his grievances.

The PLRA's mandatory exhaustion requirement "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner."  *Ross*, 136 S. Ct. at 1856.  In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the procedure "operates as a simple dead end—with officers consistently unable or unwilling to provide any

relief to aggrieved inmates," (2) when the procedure is "so opaque that it becomes, practically speaking, incapable of use," and (3) when prison administrators thwart the use of the procedure "through machination, misrepresentation, or intimidation." *Id.* at 1859-60; *accord Stewart v. Suffolk Cty. Sheriff's Office*, 792 F. App'x 136, 138 (2d Cir. 2020) (summary order). Aside from these circumstances, "the PLRA's text suggests no limits on an inmate's obligation to exhaust— irrespective of any 'special circumstances.'" *Ross*, 136 S. Ct. at 1856.

The Second Circuit addressed the "opaqueness" unavailability exception in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). There, the court held that a grievance program is functionally unavailable in the "extraordinary circumstance[]" where a special housing unit inmate hands a corrections officer a grievance but the corrections officer fails to file it. *Id.* at 124. The court explained that "the regulations only contemplate appeals of grievances that were actually filed," rendering it "practically impossible for [the plaintiff] to ascertain whether and how he could pursue his grievance." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* (quoting another source). Therefore, "the regulatory scheme . . . [was] so opaque and so confusing that . . . no reasonable prisoner can make use of it." *Id.* (quoting another source). The Second Circuit concluded that because the grievance procedures were unavailable to the plaintiff, he had satisfied the PLRA's exhaustion requirement.

Since *Williams*, multiple courts in this Circuit have concluded that a grievance procedure may be unavailable where, as here, an inmate handed a grievance to an officer, but the officer failed to file or process it. *See Hamilton v. Westchester Cty.*, No. 18-CV-8361 (NSR), 2020 WL 917214, at *4 (S.D.N.Y. Feb. 25, 2020) (denying motion to dismiss where it appeared from face of the complaint that officer refused to accept grievance); *Hamlett v. Stotler*, No. 917CV0939GLSTWD, 2019 WL 4306999, at *9 (N.D.N.Y. Aug. 15, 2019) (concluding, after

holding a hearing, that plaintiff's failure to exhaust was excused where plaintiff testified that prison would not accept his grievance because it was untimely), *report and recommendation adopted*, No. 917CV0939GLSTWD, 2019 WL 4305443 (N.D.N.Y. Sept. 11, 2019); *Ortiz v. Annucci*, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *8-9 (S.D.N.Y. Mar. 29, 2019) (denying motion for summary judgment where plaintiff maintained that he drafted and attempted to file a grievance but the officer to whom he handed it failed to file it).

Here, the evidence before the Court—all of which was submitted by Defendants—suggests that, at the very least, there is an issue of fact as to whether Plaintiff's failure to exhaust should be excused. The only testimony regarding grievances comes from Plaintiff himself, who asserts that, while in keep lock,[1] he handed three separate grievances to three separate officers regarding the January 4, 2012 incident. ECF No. 68-9 at 32. Plaintiff testified that those officers destroyed his grievances. *Id.* Plaintiff's testimony is uncontroverted by any other testimony before the Court. Rather, Defendants rely on logs of *filed* grievances, noting that Plaintiff's grievances do not appear there. ECF No. 68-6; ECF No. 68-7. But, of course, if Plaintiff's testimony is to be believed, his grievances would *not* appear on any such records because they would have been destroyed before they were officially filed. The absence of Plaintiff's grievances from a record of *filed* grievances is not proof that Plaintiff never properly submitted them, where, as here, he alleges that the grievances were destroyed long before they would have entered any official logbook. As *Williams* acknowledges, "the regulations only contemplate appeals of grievances that were actually filed." 829 F.3d at 124.

Defendants attempt to weaponize those logbooks further, but again, their efforts backfire. They point out that, during his time at Steuben County Jail, Plaintiff submitted several grievances

---

[1] It is unclear from the record precisely what this means here and whether Plaintiff had any access to the people and resources he would normally have if not in keep lock.

which *were* recorded in the logbooks, insinuating that the presence of those grievances in the logbooks is proof that Plaintiff knew of the proper grievance procedures but failed to follow them with respect to the grievances at issue here. The Court is not persuaded. Indeed, it seems equally plausible that given his success in filing grievances previously, something went wrong that prevented him from following that procedure here. Plaintiff acknowledged that he understood the grievance procedure and had, before this incident, never encountered a problem submitting a grievance. To be sure, Plaintiff successfully filed unrelated grievances after the incident. He also faced disciplinary action for the incident, ECF No. 68-4, and filed numerous requests for medical assistance due to his alleged injuries, ECF No. 68-8, highlighting that staff at the jail were aware of the incident.[2]    If Plaintiff knew the proper grievance procedures and had properly filed grievances before, as Defendants admit, why would he fail to follow them here?

Finally, the grievance procedures seem to be rather "opaque" on their face.[3]    As explained above, they require that an inmate first attempt to informally resolve the matter with a housing officer. ECF No. 68-5 at 19. If the result is unsatisfactory, the inmate must "request a 'Grievance Form' in writing from the facility Grievance Coordinator." *Id.* The inmate must then "complete" a grievance form. *Id.* The rules do not specify to whom the grievance form must be submitted once it is "complete" or what to do if it is rejected. Moreover, the rules provide that after completing the grievance form, the inmate "will receive a written determination within five business days of the Grievance Coordinator's response." *Id.* But the rules do not make clear that the inmate must submit the form to the Grievance Coordinator or how, under these circular

---

[2] Defendants fault Plaintiff for never mentioning his grievances in his requests for medical assistance or his other grievances. ECF No. 68-11 at 5.

[3] In its research, the Court has not uncovered any other cases in this Circuit interpreting the Steuben County Jail's grievance procedures.

procedures, an inmate can receive a response from the Grievance Coordinator five days after the Grievance Coordinator responds.  Nor do the rules contemplate what an inmate must do if a grievance is never acted upon or, as here, what to do if the inmate is in keep lock.

Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that an issue of fact exists as to the availability of the grievance process to Plaintiff, precluding summary judgment in Defendants' favor.  *See Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order) ("The record establishes that Medina's allegations, supported by witness testimony, about defendants' actions to prevent the filing of Medina's grievances concerning the June 2007 incident are sufficient, when viewed in the light most favorable to Medina, to raise a genuine issue of material fact as to whether the grievance process was 'available' to Medina under the *Ross* and *Williams* exhaustion analysis."); *Jackson v. Downstate Corr. Facility*, No. 16 Civ. 267, 2018 WL 3650136, at *9 (S.D.N.Y. July 31, 2018) (denying summary judgment motion based on failure to exhaust administrative remedies where evidence showed that the plaintiff "submitted a grievance, but that grievance was never filed," and the appeal procedures were "prohibitively opaque"); *Hurst v. Mollnow*, No. 16 Civ. 1062, 2018 WL 4178226, at *10 (N.D.N.Y. July 20, 2018) ("In light of *Williams*, the Court finds material issues of fact as to the availability of the grievance process and whether Plaintiff attempted to exhaust his administrative remedies, precluding summary judgment" where plaintiff claimed he filed a grievance, was then transferred, and there was no record of his grievance), *report and recommendation adopted*, No. 16 Civ. 1062, 2018 WL 4153926 (N.D.N.Y. Aug. 30, 2018); *Fann v. Graham*, No. 15 Civ. 1339, 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff

attempted to exhaust his administrative remedies . . . ."), *report and recommendation adopted*, No. 15 Civ. 1339, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); *Reid v. Marzano*, No. 15 Civ. 761, 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) (denying summary judgment motion based on exhaustion argument, noting that "it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame").

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 68, is DENIED.  There are issues of fact as to whether Plaintiff's failure to exhaust his administrative remedies should be excused.   Because such disputed factual issues should be decided by the Court, not a jury, *Reid*, 2017 WL 1040420, at *4, the parties should be prepared to discuss next steps at the previously-scheduled status conference on May 28, 2020 at 10:00 a.m.

IT IS SO ORDERED.

Dated: May 15, 2020
     Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court