UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

MARLAND BROOKS,

                           Plaintiff,                    DECISION AND ORDER

v.                                                     Case # 14-CV-6690-FPG

GREGORY L. MULLEN, et al.,

                           Defendants.
───────────────────────────────────────────────

## INTRODUCTION

*Pro se* Plaintiff Marland Brooks is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff commenced the instant action on October 29, 2014, in the United States District Court for the Southern District of New York, pursuant to 42 U.S.C. § 1983, alleging constitutional violations arising from events that occurred on January 4, 2012, while Plaintiff was housed at the Steuben County Jail. ECF No. 1. The case was transferred to this Court, ECF No. 5, and Defendants Gregory L. Mullen, Luke Reinbold, and David Causer (collectively, "Defendants") were served in the summer of 2015, but they failed to answer. Over two years later, in response to an Order to Show Cause, ECF No. 21, Defendants answered, and the parties commenced discovery.

Defendants did not provide Plaintiff with discovery he requested, and the Court held a conference on February 19, 2020 to set a trial date. ECF No. 65. At that time, Defendants indicated that they would provide discovery to Plaintiff and that they intended to file a motion for summary judgment. Recognizing that this case had been pending for over five years, the Court set an abbreviated briefing schedule and a trial date. The trial date was subsequently adjourned due to the COVID-19 Pandemic.

1

On March 6, 2020, Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. ECF No. 68. On May 15, 2020, the Court denied Defendants' motion for summary judgment. Plaintiff claimed that he had handed grievances to unknown corrections officers, but the grievances were never formally filed, and he never received a response to them. The Court concluded that Plaintiff had not exhausted his administrative remedies by completing the grievance process, but that a hearing was required to determine if such administrative remedies were in fact available to Plaintiff. ECF No. 81.

Thereafter, the Court sought to determine to whom Plaintiff gave the grievances. ECF No. 82. At the Court's request, Defendants provided Plaintiff with records identifying the corrections officers with whom he had contact on the dates in question. ECF No. 85. On August 6, 2020, the Court received a letter from Plaintiff in which he stated that he believed he gave the grievances to "Officer Thomas Roderick" and "Kevin Ames." ECF No. 87. At a conference, defense counsel indicated that Kevin Ames is employed by the Steuben County Jail, but that Officer Roderick had retired. ECF No. 91. The Court set the matter down for an evidentiary hearing for October 1, 2020. In a letter dated September 11, 2020, defense counsel indicated that he had searched employment records and that the Steuben County Jail never employed a "Thomas Roderick," but did employ a "Roderick Ford," who defense counsel indicated he would produce for the hearing. ECF No. 92.

Just days before the hearing, on September 28, 2020, the Court received a letter from Plaintiff admitting that he did "not know where the name Roderick came but Thomas is the officer last [sic] name" of the person to whom he gave the grievances. ECF No. 94. On September 30, 2020, Defendants wrote a letter to the Court, noting that Plaintiff had not asked that Officer

Thomas be produced for the hearing, and that Officer Thomas had retired long ago and was no longer a county employee who defense counsel could produce. ECF No. 93.

The Court held an evidentiary hearing on October 1, 2020. Plaintiff and Lieutenant Justin Mills—who described the grievance process—testified. ECF No. 95. The Court reserved decision.

For the reasons that follow, the Court concludes that Plaintiff's administrative remedies were not unavailable to him and he failed to exhaust them. Therefore, the Complaint is DISMISSED.

## FACTUAL BACKGROUND

### I. Plaintiff's Deposition Testimony

Plaintiff testified at his deposition that on January 4, 2012, while he was an inmate at the Steuben County Jail, Defendants attacked him, causing serious injuries. That day, Plaintiff "took somebody's cake" during mealtime, and, as a result, Defendants escorted Plaintiff to keep lock. ECF No. 68-9 at 19. Defendants handcuffed Plaintiff behind his back, and, when Mullen began to remove the cuffs upon arriving at the cell, a struggle ensued. *Id.* at 20-21. According to Plaintiff, Defendants told Plaintiff to get on his knees, and place his free hand on his head. *Id.* at 22. Not satisfied with Plaintiff's hand placement, Reinbold "started smushing [his] face into the mattress, broke [his] glasses." *Id.* Plaintiff "couldn't breathe." *Id.* Defendants tried to regain control of Plaintiff's free hand, causing his right shoulder to "pop." *Id.* at 24-25. Defendants kicked, hit, and pushed Plaintiff, and Plaintiff tried to defend himself. *Id.* at 24-27. Causer sprayed Plaintiff in the mouth with pepper spray. *Id.* at 26. Once Defendants were able to remove the handcuffs, Plaintiff lay on the floor and Defendants "really did what they had to do." *Id.* at 27-28. Eventually,

Defendants "carried [Plaintiff] out" of the cellblock and Plaintiff was able to wash off the spray. *Id.* at 27-29.  Later that day, Plaintiff was brought to a different cell.  *Id.* at 30.

Plaintiff testified that he "wrote three grievances about this incident" but officers "ripped them up and threw them in the garbage."  *Id.* at 32.  Plaintiff indicated that he could not remember who these officers were.  *Id.*  He spoke to the major or superintendent several times about the incident, to no avail.  *Id.* at 32-33.  He retained a copy of one grievance, but it was misplaced when he was transferred.  *Id.* at 33.  Plaintiff also testified—and the records bear out—that he had submitted numerous grievances in the past, but none were ever destroyed.  *Id.* at 33.

## II.     Evidentiary Hearing Testimony

### A.     Plaintiff's Hearing Testimony

Plaintiff testified at the hearing that, after the incident on January 4, 2012, he requested and received three grievance forms while he was in keep lock.  He gave the first completed form to Officer David Thomas on January 7, 2012 at around 4:00 p.m.  Officer Thomas placed the grievance on the desk and disappeared.  At around 7:45 p.m., Officer Christopher Stewart looked at the grievance on the desk and then ripped it up.  The next afternoon, Plaintiff gave Officer Thomas another completed grievance form.  Plaintiff never received notice that either grievance was received or that a decision had been rendered, despite that he was familiar with the grievance process and successfully submitted grievances for other incidents.

When questioned about why Plaintiff had previously indicated in writing that he had given the grievances to Officers Thomas Roderick and Kevin Ames, Plaintiff admitted that he did not know to whom he gave the second grievance.  He acknowledged that he had indicated at his deposition that he gave three separate grievances involving the January 4, 2012 incident to three separate officers on three separate days and that they were all ripped up.  At the hearing, Plaintiff

4

amended that statement, testifying that, in fact, he had submitted the third grievance about a separate incident that did not involve the events of January 4, 2012. That grievance was filed.

### B.      Lieutenant Justin Mills's Testimony

Lieutenant Justin Mills testified that he has been employed by Steuben County for 17 years, and he currently oversees policies, procedures, and inmate records at the Steuben County Jail. In 2012, at the time of the incident, he was assigned to the Steuben County Jail as a corrections officer.

Lieutenant Mills testified that in January 2012, the Steuben County Jail maintained a grievance procedure that was documented in an inmate handbook, which each inmate received upon arrival at the Steuben County Jail. Plaintiff acknowledged receipt of the inmate handbook. If an inmate wished to grieve an issue, he would work with the Housing Unit officers to try to resolve the issue. If the Housing Unit officers could not resolve the issue, officers would provide the inmate with a grievance form or a form to request a grievance form.

Lieutenant Mills reviewed the file containing all of the grievances Plaintiff submitted while he was at the Steuben County Jail. Although there were 24 pages of grievances, none related to the January 4, 2012 incident. Lieutenant Mills testified that he has never witnessed the destruction or discarding of an inmate grievance.

At the time Plaintiff allegedly sought to file grievances about the January 4, 2012 incident, he was under constant watch, meaning that corrections officers supervised his conduct 24 hours a day because he had demonstrated that he was at risk for self-harm. Corrections officers sat directly in front of Defendant's cell and were required to log Defendant's conduct every 15 minutes and any other significant events that occurred.

Lieutenant Mills testified that inmates can receive grievance forms or grievance request forms from Housing Officers but that officers supervising constant watch do not have grievance forms or requests slips available to distribute because they are not allowed to get up from their post in front of the cell they are watching to retrieve a form. Furthermore, any medical request form must be made directly to a medical professional, due to HIPAA. Constant watch officers are directed not to accept medical requests.

## DISCUSSION

### I.   Exhaustion Generally

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). To properly exhaust administrative remedies, an inmate must comply with the facility grievance "system's critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 95 (2006), including time limits. *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011).

"Under New York regulations, an inmate at a local correctional facility"—such as the Steuben County Jail—"must file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Baez v. Rathbun*, No. 16-CV-6552L, 2018 WL 3528311, at *4 (W.D.N.Y. July 23, 2018) (citing 9 N.Y.C.R.R. § 7032.4(d)); *see also Hill*, 657 F.3d at 124 (describing New York's grievance process for county jails). The grievance procedure for inmates at the Steuben County Jail is contained in an Informational Handbook, which is attached to

6

Defendants' motion for summary judgment. It provides—as Lieutenant Mills testified at the hearing—that inmates must first attempt to resolve the matter with the Housing Officer. ECF No. 68-5 at 19. If the inmate receives an unsatisfactory response, he may request a Grievance Form "in writing from the facility Grievance Coordinator," which he must "complete . . . within five days of the incident giving rise to the grievance." *Id.* The Inmate Handbook provides that the inmate "will receive a written determination within five business days of the Grievance Coordinator's response." *Id.* The inmate then has two business days thereafter to appeal to the Jail Superintendent, who will make a determination within five business days. *Id.* A decision by the Jail Superintendent must be appealed in writing within three additional business days to "the Commission of Corrections Civilian Policy and Complaint Review counsel." *Id.*

Plaintiff admits that he did not exhaust his administrative remedies for any grievance filed relating to the January 4, 2012 incident. ECF No. 1 at 2. Rather, he asserts that he tried to follow the grievance procedure, but was unable to do so because the officers destroyed his grievances.

## II.   Unavailability of Grievance Procedures

The PLRA's mandatory exhaustion requirement "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 136 S. Ct. at 1856. In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the procedure "operates as a simple dead end—with officers consistently unable or unwilling to provide any relief to aggrieved inmates," (2) when the procedure is "so opaque that it becomes, practically speaking, incapable of use," and (3) when prison administrators thwart the use of the procedure "through machination, misrepresentation, or intimidation." *Id.* at 1859-60; *accord Stewart v. Suffolk Cty. Sheriff's Office*, 792 F. App'x 136, 138 (2d Cir. 2020) (summary order). Aside from

these circumstances, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Ross*, 136 S. Ct. at 1856.

The Second Circuit addressed the "opaqueness" unavailability exception in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). There, the court held that a grievance program is functionally unavailable in the "extraordinary circumstance[]" where a special housing unit inmate hands a corrections officer a grievance but the corrections officer fails to file it. *Id.* at 124. The court explained that "the regulations only contemplate appeals of grievances that were actually filed," rendering it "practically impossible for [the plaintiff] to ascertain whether and how he could pursue his grievance." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* (quoting another source). Therefore, "the regulatory scheme . . . [was] so opaque and so confusing that . . . no reasonable prisoner can make use of it." *Id.* (quoting another source). The Second Circuit concluded that because the grievance procedures were unavailable to the plaintiff, he had satisfied the PLRA's exhaustion requirement.

Since *Williams*, multiple courts in this Circuit have concluded that a grievance procedure may be unavailable where an inmate handed a grievance to an officer, but the officer failed to file or process it. *See Hamilton v. Westchester Cty.*, No. 18-CV-8361 (NSR), 2020 WL 917214, at *4 (S.D.N.Y. Feb. 25, 2020) (denying motion to dismiss where it appeared from face of the complaint that officer refused to accept grievance); *Hamlett v. Stotler*, No. 917CV0939GLSTWD, 2019 WL 4306999, at *9 (N.D.N.Y. Aug. 15, 2019) (concluding, after holding a hearing, that plaintiff's failure to exhaust was excused where plaintiff testified that prison would not accept his grievance because it was untimely), *report and recommendation adopted*, No. 917CV0939GLSTWD, 2019 WL 4305443 (N.D.N.Y. Sept. 11, 2019); *Ortiz v. Annucci*, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *8-9 (S.D.N.Y. Mar. 29, 2019) (denying motion for summary judgment where

8

plaintiff maintained that he drafted and attempted to file a grievance but the officer to whom he handed it failed to file it).

### III. Burden of Proof

"The failure to exhaust administrative remedies is an affirmative defense which must be raised by the defendants," and it is Defendants' burden to establish that Plaintiff failed to meet the exhaustion requirement. *Brown v. Dubois*, No. 915CV1515LEKCFH, 2018 WL 2078823, at *5 (N.D.N.Y. Apr. 10, 2018), *report and recommendation adopted*, No. 915CV1515LEKCFH, 2018 WL 2077891 (N.D.N.Y. May 2, 2018). However, Plaintiff bears the burden of demonstrating that such a process was unavailable. *Henrius v. Cty. of Nassau*, No. 13CV1192SJFSIL, 2019 WL 1333261, at *4-5 (E.D.N.Y. Mar. 22, 2019); *see White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order).

In evaluating whether Plaintiff complied with the exhaustion requirement or whether that exhaustion requirement should be excused, the Court must determine issues of a law and credibility. "Exhaustion, even where the facts are disputed, is a matter of law for the Court to decide." *Brown*, 2018 WL 2078823, at *5 (citing *Engles v. Dougherty*, 9:14-CV-1185 (TJM/ATB), 2017 WL 6466309, at *5 n.4 (N.D.N.Y. Aug. 22, 2017)).

### IV. Analysis

The Court had the ability to observe the witnesses and evaluate their credibility during the exhaustion hearing. The Court finds credible the testimony of Lieutenant Justin Mills that a grievance procedure was in place at the Steuben County Jail and available to Plaintiff, that Plaintiff received and acknowledged the grievance procedure, that he had successfully filed grievances before and after the incident, but that the record contained no grievances related to the January 4, 2012 incident. Moreover, the Court finds credible Lieutenant Mills's testimony insinuating that,

based on his knowledge of past events, it is extremely unlikely that a corrections officer destroyed two of Plaintiff's grievances, especially when Plaintiff's grievance file contains multiple grievances related to other incidents.

The Court simply does not find credible Plaintiff's testimony that he gave two grievances to Officer Thomas on two separate days, that Officer Stewart ripped up one grievance, and that the other grievance was never filed. Over the course of the eight years since this incident, Plaintiff has changed multiple aspects of his story regarding to whom he gave the grievances, who ripped them up, and when all of this occurred several times.

At his deposition, Plaintiff insisted he gave three grievances to three separate officers on three separate days, but he could not remember their names. In written submissions to the Court, after reviewing discovery material provided to him revealing which officers he came into contact with on the days he allegedly submitted the grievances, Plaintiff insisted that he gave the grievances to only two officers: Officers Thomas Roderick and Kevin Ames. When Defendants indicated to Plaintiff that there was no Thomas Roderick but that there was a Roderick Ford, Plaintiff agreed that this was the correct officer. In a letter to the Court before the evidentiary hearing, Plaintiff again changed his mind, insisting this time that he actually gave the grievance to an Officer Thomas. At the hearing, Plaintiff raised for the first time that Officer Stewart destroyed one grievance and he does not know what happened to the other one. This story is inconsistent with the stories Plaintiff has been telling for the past eight years.

Importantly, the testimony clearly establishes that Plaintiff knew how the grievance procedure operated. Indeed, Plaintiff acknowledged that he could have but did not pursue the grievances further.

Given Plaintiff's confusing, disjointed, and inconsistent statements regarding the grievances, the Court finds it more likely that Plaintiff never submitted a grievance for his alleged injuries resulting from the January 4, 2012 incident. Plaintiff had filed multiple grievances about multiple incidents, and it appears that he simply never pursued grievances for the January 4, 2012 incident.

Accordingly, the Court finds that Plaintiff has not satisfied his burden of establishing that the grievance process was unavailable to him and he failed to exhaust his administrative remedies.

## CONCLUSION

Based on the credible testimony, the Court concludes that Defendants have met their burden of proof on their affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. Plaintiff has not established that those administrative remedies are unavailable to him. Therefore, the Complaint is DISMISSED.

IT IS SO ORDERED.

Dated: October 21, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court